Woodrow Bradley, a/k/a Woodrow Green, Jr., and Douglas Bradley, a/k/a Douglas Green, by Odessa Bradley, Their Mother and Next Friend, Plaintiffs-Appellees, v. The Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation, Defendant-Appellant.

Gen. No. 49,270.

First District, Fourth Division.

March 3, 1965.

Lord, Bissell & Brook, of Chicago (Newell S. Board-man, Jay M. Smyser, and William P. Butler, of counsel), for appellant.

Thaddeus B. Rowe and W. Elbert Washington, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a bench trial in which judgment was entered in favor of plaintiffs for $51,000.

The appeal is based, initially, on the contention that plaintiffs have no cause of action under the Structural Work Act.

Defendant contracted with Kenny Construction Company in July 1958 to do work on the Calumet

Intercepting Sewer. On October 18, 1958, Woodrow Green, the putative father of the minor plaintiffs and an employee of Kenny, was working with an air spade (as a clay-cutter) in the vicinity of Doty Road and 130th Street in Chicago on an excavation for a drop manhole.[1] Green was killed as the result of a cave-in in the excavation.

The suit was brought by the nominal plaintiff, Odessa Bradley,[2] on June 7, 1960, as the mother and next friend of the two minor plaintiffs for whom Green was paying support under a court order in a paternity proceeding which had determined that he was their father.

Plaintiffs' complaint alleged that "supports, protective sheets, stays, coverings, and sidings are required to prevent soft mud, earth, clay from falling below upon workers in the shaft-pit"; that defendant had a legal duty to comply with the "Scaffold Act" and that defendant knowingly or wilfully violated and disregarded said Act by reason of which Green was injured and died.

The cause of action in the instant case was not based on negligence in failing to provide a safe place to work, nor was it a claim under the Workmen's Compensation Act which includes "excavating work" as an extra-hazardous vocation. The complaint clearly and precisely based liability on the Structural Work Act. (Ill Rev Stats 1957, c 48, § 60 et seq.)

Defendant argues that the Act applies only to aerial structures and those passing under or by them, that an excavation for a drop manhole does not fall within

[1] Plaintiffs' witness, James Morris, testified that a drop manhole is "a shaft, a box shaft into the tunnel. It was supposed to be about 18′ deep and 12′ x 7′ wide."

[2] At the end of the trial Odessa disclosed that she had been married to James Thompson, one of plaintiffs' chief witnesses, for *almost a year* before she commenced this suit.

the ambit of the Act. Since there is no decision in Illinois construing the applicability of the Structural Work Act to underground work, plaintiffs urge that we look to New York for guidance because of similarities in its scaffold legislation.

■ Plaintiffs reason that a manhole is a structure within the Act because a New York court in 1913 held a concrete sewer to be a structure within its Labor Law Act of 1908. Armenti v. Brooklyn Union Gas Co., 142 NYS 420. That New York statute protected employees and others who were directed to perform labor on structures from unsafe scaffolds and other contrivances. It is clearly distinguishable from the Illinois Structural Work Act whose purpose is to protect persons working on scaffolds as well as those passing under or by them and to do so "in such manner as to prevent the falling of any material that may be used or deposited thereon." In the Armenti case the plaintiff was one of a "concrete gang" whose duty it was to prepare and lay concrete to build a large sewer;[3] the "carpenter gang" built the supports for the excavation. The court found that the supports were installed negligently and did not provide proper protection to the employee. This is hardly comparable to the instant case where a drop manhole (12 feet by 7 feet) was being excavated and no supports were used.

Plaintiffs then ask that we consider the present New York Labor Law section 240 which provides that

---

[3] The sewer was built of concrete, was nearly circular in form, about 17 feet in diameter, and was laid at the bottom of an open trench about 18 feet wide and about 45 feet deep. On the day of the accident about 135 feet of this trench was open. The sewer had been constructed in two sections, and the lower half or invert of the sewer at the bottom of the trench had been completed. This invert was at least 7 feet in height from the bottom of the excavation, and extended the entire width thereof between the sheathing on either side, Armenti, p 422.

employers or others who direct the performance of labor on structures *"shall furnish or erect, or cause to be furnished or erected"* scaffolds and other devices to properly protect the person employed or directed. Section 60 of the Illinois Structural Work Act only provides for protection when a scaffold or other contrivance is *"erected or constructed."* We cannot consider the mandatory requisites of the New York law in construing the provisions of the Illinois statute which apply only when a scaffold is used.

Let us examine the Illinois Structural Work Act as it applies to the facts of the instant case.

Section 60 defines the standards for mechanical contrivances that are "erected or constructed" for use in activities encompassed by the Act. It does not prescribe standards to determine when such contrivances must be used. This is illustrated by the language: (1) "All scaffolds . . . or other mechanical contrivances *erected or constructed* . . ." and (2) the requirement that a safety rail for a scaffold *"swung or suspended* from an overhead support. . . ." (Emphasis supplied.) In the instant case there was no scaffold, support or other mechanical contrivance. Even if the excavated hole was considered a "structure" within the meaning of the Structural Work Act, there was no violation of any of the protective measures provided for in the statute.

From section 60 of the statute it would appear that its purpose is to give protection to persons employed on scaffolds or mechanical contrivances or passing under or by the same. The purpose may also be gleaned from other sections. Section 64 pertains to scaffolds on special types of structures such as water pipes, tanks and chimneys; it sets out requirements for a support or other suitable device below a scaffold to prevent injuries in the case of accidents to the working scaffold. The language of that section does

not require that scaffolding be used on these projects; it merely requires that a safe subscaffolding be used if scaffolding in fact is utilized. Section 65 relates to flooring and beams and section 66 to elevating machines.

 In construing section 60, we are assisted by the reasoning in Thon v. Johnson, 30 Ill App2d 317, 174 NE2d 400, in which the court held that a cement form upon which plaintiff stood was not a scaffold within the meaning of the statute. The court reasoned:

> We are aware of the rule that our statute should be liberally construed, but if the statute were construed so as to cover the concrete form involved in this case, such a construction of the statute would be equivalent to holding that each and every place where a workman chooses to stand thereby becomes a scaffold within the meaning of the statute.

If "structure" is broadened to include an excavation, such interpretation would be tantamount to holding that any place at which a person worked became a "structure." This is not the intention of the Act. We realize that the Act was designed to deal with highly dangerous activities; that the purpose was to prevent injuries to persons employed in extra-hazardous occupations; and that the Act should be liberally construed in an attempt to effectuate the statutory purpose, Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785; Thon, supra. However, we find that the Structural Work Act does not "require" supports or stays to be used in excavation work as claimed by plaintiffs; that a drop manhole is not a "structure" within the Act; and that the accident was not caused by the insufficiency of a "scaffold, support or stay" because none was used.

In view of our decision it is unnecessary to discuss the alternative arguments advanced by defendant.

■ Plaintiffs have filed several motions which were taken with the case. They relate to the sufficiency of the abstract and the procedural sufficiency of perfecting this appeal. Specifically, plaintiffs contend that defendant did not appeal from a judgment pronounced and rendered in open court, and that the order appealed from was nonexistent. However, the abstract contains a written judgment order entered by the trial court, allegedly one day after it was rendered orally. The fact that the notice of appeal referred to the date that the post-trial motion was denied instead of the date of the judgment is merely an error of form.

Plaintiffs' third motion raises five alleged defects. Three of these relate to the notice of appeal. Plaintiffs contend that the notice of appeal was not filed or served and that the proof of service of the notice of appeal was never filed.

On April 15, 1963, defendant filed a paper designated "Notice of Filing Notice of Appeal" and attached to it were two other papers: "Notice of Appeal, from the Order of March 27, 1963, Overruling Defendant-Appellant's Post-Trial Motions" and "Affidavit of Service of the Notice of Filing Notice of Appeal." The trial court time-stamped "Filed" the notice of filing of notice of appeal but not the two attached papers. In Selvaggio v. Kickert School Bus Line, Inc., 46 Ill App2d 398, at 403, 197 NE2d 128, it was held that "The court record imports verity and that applies to dates of entry as well as in other aspects." The affidavit of plaintiffs' attorney confirms the verity of the record as it acknowledged the receipt of the notice of filing the notice of appeal and it did not deny that the notice of appeal was attached thereto. Moreover, the plaintiffs furnished,

with their motion, a certified copy of the notice of filing the notice of appeal and attached papers.

■ Plaintiffs further contend that the service of the notice of appeal and proof of such service could not be made until after the notice of appeal was actually filed. In Schornick v. Prudential Ins. Co. of America, 277 Ill App 36, 39, the court rejected the contention that a receipted copy of a notice of appeal and the actual notice of appeal filed together constituted a failure to comply with the proof of notice filing requirements of the Civil Practice Act.

Plaintiffs also contend that their second attorney was not served with any papers relating to the appeal. Defendant admits this. However, Supreme Court Rule 34(2) (Ill Rev Stats 1959, c 110, § 101.34(2)) states that "Service of notice upon 1 of 2 or more partners is sufficient."

Finally, plaintiffs argue that the post-trial motion was not filed, presented and ruled upon within the 30 day period prescribed by section 68.3 of the Civil Practice Act. (Ill Rev Stats 1959, c 110, § 68.3.) However, this requirement refers only to the filing of such motion within 30 days of the entry of judgment. Plaintiffs submit, in their affidavit, that the motion was filed within that 30 day period.

■ The motions are denied for the reasons set out above and because they raise mere technicalities and seek to avoid a decision on the merits. In Foman v. Davis, 371 US 178, at 181, the court said:

> The defect in the second notice of appeal did not mislead or prejudice the respondent. With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judg-

ment sought to be vacated. Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and denial of the motions was manifest. Not only did both parties brief and argue the merits of the earlier judgment on appeal, but petitioner's statement of points on which she intended to rely on appeal, submitted to both respondent and the court pursuant to rule, similarly demonstrated the intent to challenge the dismissal.

It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.

The judgment in favor of plaintiffs is reversed and judgment is entered in favor of defendant.

Reversed.

McCORMICK, P. J. and ENGLISH, J., concur.

490