Frank Parizon, Plaintiff-Appellee, v. Granite City Steel Company, a Corporation, and Bowman Steel Corporation, a Corporation, Defendants-Appellants, and M. H. Wolfe and Company, a Corporation, Defendant.

Gen. No. 65–51.

Fifth District.
May 18, 1966.

CRAVEN, J., dissenting.

Pope and Driemeyer, of East St. Louis (Joseph B. Mc-Donnell, of counsel), for appellant, Granite City Steel Company, and R. W. Griffith, Jr., Griffith & Hoefert, of Alton, for appellant, Bowman Steel Corporation.

Beatty, Schooley & Theis, of Granite City (William L. Beatty, of counsel), for appellee.

TRAPP, P. J.

The defendants, Granite City Steel Company, a corporation, and Bowman Steel Corporation, a corporation, each appeal from a judgment in the sum of $105,000, entered upon the verdict of a jury. The several post-trial motions of the defendants were denied. The "Scaffold Act" is in issue.

The structure on which plaintiff was working was an addition to an existing building owned by Granite City, designated in the pleading and evidence as the "8 Bay Bar Extension Building," constructed by extending the building apparently in its long dimension. The building was generally fabricated by the use of metal sheets attached to a metal framework.

The first issue raised involves the nature of the roof of the building and its use as a surface for the men working in laying the roof. The Abstract provides minimal data concerning the dimensions. Plaintiff's Exhibit 4 is identified as a photograph of a portion of the building and it shows the roof from the side of the building which appears to be a roof sloping from a ridgepole along the center of the long dimension. A witness for the plaintiff testified that he thought it was about 20 feet from the center ridge to the edge of the roof. Plaintiff testified that he had "heard" that the edge of the roof was 32 feet above the ground. One Bloomquist, a Granite City building inspector, testifying only from the photographic exhibit, estimated that the edge of the roof was 35 or 40 feet above the ground. From the same source he estimated that the pitch of the roof was 4 inches per lateral foot. In his opening statement, plaintiff's counsel stated that the roof slanted but "it was not exceedingly steep."

The roofing material consisted of corrugated sheets which were coated with an asbestos or a bituminous and asbestos material, at least upon the outer or upper surface as the sheets were laid. The sheets of roofing varied in length, and there is no agreement by the witnesses as to such dimensions. It is probable that a sheet 4 feet long was first laid at the lower edge of the roof, a sheet 7 or 8 feet long was laid next above it, and a third sheet 10 or 11 feet long was laid to the center ridge. The sheets were 30 or 33 inches in width and they

were attached by screws to metal purlins which extended the length of the building.

In laying the sheets to form the roof, a crew of three men were employed. Two men, standing on the roof of an existing building, fastened the sheets to the purlins. Upon being so fastened, the sheets became a permanent part of the building, as there was nothing more to be done so far as the roof was concerned. The men moved upon these fastened sheets and worked from them to lay the next row or section of the sheets of roofing. Prior to the time of plaintiff's injury, the roofing had been laid for a distance of 50 or 60 feet from the starting point.

The plaintiff, as the third man in the crew, had the duty of carrying the sheets as needed to the men who laid them. Sheets of roofing were stacked according to their respective sizes across the center ridge of the building at a point near the place where the work began, apparently resting upon a frame so that the sheets would lie flat. In performing his duties plaintiff would pick up a sheet and walk along the roof, carrying it to the other men. From his testimony it appears that he walked along the "upper part" of the roof, which we take to mean along the center ridge. No guardrails or other protective devices were in place along the edge of the roof or at any other place.

Plaintiff had been an ironworker for 13 years, climbing ladders, working on beams high in the air, and had had, upon other occasions, engaged in installing roofing of buildings in the manner generally described. He had known that work of this character was to be done and had purchased "some work shoes for that purpose 2 or 3 days before." At the time of the injury he had replaced a man on this particular sheeting crew.

Just prior to the injury, the men engaged in fastening the sheets were some 50 or 60 feet distant from the stacks of sheets. Plaintiff picked up a sheet and started

to carry it to the men. He testified that he did not know what caused him to fall, but "my footing got out from under me and I landed on my seat in a sitting position," and he then slipped down the roof and over the edge, suffering severe injury. The two men in his crew saw or heard nothing of this event and learned that plaintiff had fallen when someone shouted from below.

The pleadings in this case consist in the following:

On October 19, 1962, plaintiff filed a suit against Granite City Steel Company, which alleged that plaintiff was working on the roof of the building being erected on the property of the defendant, and that by reason of the negligence of the defendant, the plaintiff fell a great distance from the roof to the ground.

On November 28, 1962, plaintiff filed an amended complaint against Granite City Steel Company, Bowman Steel Corporation and M. H. Wolfe & Company. (At the close of plaintiff's evidence, the court directed a verdict in favor of Wolfe.) This complaint alleged that the plaintiff was working on the roof of the building erected under the control of Granite City Steel and that Bowman Steel Corporation was a contractor in charge of phases of the work; that the defendants negligently and carelessly carried out the work in such manner as to cause the plaintiff to fall from the roof of the building to the ground; that in the alternative, defendants, acting together or individually, wilfully violated the provisions of the Structural Work Act of the State of Illinois, and that as a proximate result plaintiff was caused to fall and sustained injury.

On June 6, 1963, plaintiff filed a second amended complaint against Granite City Steel Company and Bowman, alleging that the plaintiff was working on a steep roof of a building being erected under the control of Granite City; alleges the language of section 60 of the Structural Work Act; alleges that Bowman was in charge

57

of the erection or building of the roof and that the defendants, jointly or severally, wilfully failed to furnish a scaffold or other mechanical contrivance to protect people working on the roof, and that as a result of the failure to furnish a scaffold, plaintiff fell from the roof sustaining injury.

On July 15, 1964, plaintiff filed a third amended complaint. After rulings by the court at the close of all of the evidence, the case went to the jury upon the Counts as follows:

Count I was directed against Bowman and alleged the provisions of section 60, chap 48 (Ill Rev Stats, 1965), the Structural Work Act; that Bowman was a general contractor for Granite City Steel for purposes of installing a roof on a certain building designated; that plaintiff was an employee of one Kroeger who had been hired by Bowman to lay the roof of the building with roofing material to be furnished by Bowman Steel according to plans and specifications supplied by Bowman and Granite City; that in the work of covering said building, it was necessary for persons employed thereon to use scaffolds, supports or other mechanical contrivances as a place to work while said work was progressing; that when the work commenced the roof of the "old building which was being extended" was used as a scaffold, support or other mechanical contrivance to work from and as the covering was placed on the extended building such covering was used as a scaffold or support for workmen to work on, and that the plaintiff was using such scaffold or support in the performance of his work; and that the defendant, Bowman Steel Company, failed to comply with the provisions of the Structural Work Act in one or more of the following aspects:

"A. By knowingly permitting the use, erection and construction of a scaffold, support or mechanical contrivance that was not erected and constructed

58

in a safe, suitable and proper manner and was not so erected, constructed and placed as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon.

"B. By knowingly permitting the use, erection and construction on its premises of a scaffold, support or mechanical contrivance that was not erected and constructed in a safe, suitable and proper manner and was not so erected, constructed and placed as to give proper and adequate protection to the life and limb of any person employed or engaged thereon in that said scaffold was constructed so that the flooring on said scaffold was not level and in fact steep, making it highly likely that people working thereon would be likely to fall a great distance.",

and that as a proximate result of defendant's conduct, plaintiff fell from the roof, sustaining injuries.

Count III of the third amended complaint was directed against Granite City, alleging the provisions of the Structural Work Act and that Granite City was in joint charge of construction, repair or alteration of buildings as owner, that the plaintiff was employed by a subcontractor hired to cover the building and that in covering the building it was necessary for the persons employed thereon to use scaffolds or supports as a place to work while the work was progressing; and the Count continues to duplicate the allegations concerning the use of the roof of the old building and of the new building as the work progressed, and realleged the knowing failure to comply with the provisions of the Act in the language of the allegations against Bowman.

Defendant Bowman asserts in its brief and argument that the primary issue upon the pleadings is whether or not the completed portion of roof upon which plaintiff was working constitutes a scaffold under the Structural

59

Work Act, (c 48, §§ 60–69, Ill Rev Stats, 1965); that such statute does not create a duty to furnish a scaffold; that the defendant Bowman had contracted away the erection of the roof and had no employee working thereon or supervising such work, so that it was not "in charge of" the construction.

The defendant, Granite City urges that the plaintiff failed to alleged or prove any cause of action against it under the provisions of the Act and that the trial court should have directed a verdict in its favor; that the roof on which plaintiff was working and from which he fell was not an instrumentality within the terms of the Act; that plaintiff's injury was not caused by the insufficiency of any scaffold or support within the terms of the Act, and that under the evidence, it was not "in charge of" the erection of the roof on which plaintiff was employed.

This appeal directly raises the issue of whether or not the Structural Work Act applies to those circumstances where men work upon permanent structures. The pleading, as the case went to the jury, alleged that it was necessary to use scaffolds and that the roof of the building was so used. We understand that there is no controversy as to the fact that the sheets of roofing were permanently affixed and installed as a part of the building at the time the several workmen were upon the roof placing and fastening the next row of sheets.

██ If the allegations of the pleading that it was necessary to use a scaffold are taken to mean that there was a statutory duty to erect and construct a scaffold for the work being done upon this occasion, the recent authority of opinions of our courts are to the contrary. It has been held in Miller v. DeWitt, 59 Ill App2d 38, 208 NE2d 249, and Bradley v. Metropolitan Sanitary Dist., 56 Ill App2d 482, 206 NE2d 276, that section 1 of the Structural Work Act does not undertake to state or

provide when or under what conditions a scaffold is required to be erected as a matter of statutory duty.

Upon the issue as to whether or not section 1 of the Structural Work Act operates or is applicable where men work upon a completed permanent structure, we must turn to and consider the language of the Act adopted in 1907. It appears that there has been no amendment of section 1 of the Act since the date of its adoption.

The operative words of section 1 specify scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances:

> ". . . erected or constructed by any person . . . for the use in the erection, repairing, alteration, removal or painting of any house, building . . . shall be erected and constructed, in a safe, suitable and proper manner. . . ."

The Act does not undertake to define a scaffold or any of the other items referred to. The common meaning of "scaffold" as found in representative sources includes:

> "A temporary platform, usually supported on poles, designed to hold workmen and materials employed in erection, repairing or decoration of a building." (Shorter Oxford English Dictionary),

or

> "A temporary wooden or metal framework for supporting workmen and materials during the erecting, repairing or painting of a building." (Webster's New World Dictionary of American Language.)

The connotation of the operative words, ". . . erected or constructed . . . for the use in the erection, repairing . . . ," is that of a temporary erection for the ex-

press specific purpose of construction. The concept of the erection for such specific purpose is substantiated in the provisions of section 4 of the Act (c 48, § 63, Ill Rev Stats, 1965). It provides for inspection of scaffolding and the several items specified in the statute by the Director of Labor or the local authorities of municipalities charged with the duty of enforcing "Building Laws." This section provides that if upon inspection such scaffolding or the companion items are found dangerous to life or limb, the authorities should notify the person responsible for the erection or maintenance, prohibit the use thereof, and the person responsible is required to remove the scaffolding or platform.

The latter section has not been amended by the Legislature in terms of its operative effect, the only amendment being to substitute the Director of Labor for an official formerly known as the Factory Inspector.

Having in mind the common meaning of the term "scaffold," and the provision that upon notice the responsible person is required to remove the "scaffold" or "platform," it is difficult to conclude that the intent or understanding of the Legislature was that the language of the Act applied to a fixed permanent structure, or that such a structure, or its parts, would be a scaffold or platform within the meaning of the Act.

No cases from our Supreme Court have been cited and we have found none which hold a permanent structure, or, as in this case, the roof of the building as permanently affixed is to be treated as a scaffold or as an item of the several categories set forth in section 1 of the Act. On the contrary, the several cases of our Appellate Courts cited and referred to, or developed through our own investigation, emphasize that the Act is applicable to the temporary structures erected for use as an incident to the construction work. In 1915, the Appellate Court, in Legowski v. Moreland & Co., 195 Ill App 377, appears to have decided that the Act was not

applicable where a workman fell while working or walking upon certain uncovered joists, which was said to be a customary manner of working. Specifically, the court held that it was not error to give an instruction which "ignored" the Structural Work Act, and affirmed a verdict for the defendant. The opinion noted that the Act did not apply as the injury was not due to any defects of the "appliances" specified in the statute.

In the relatively current case of Thon v. Johnson, 30 Ill App2d 317, 174 NE2d 400, a certain wooden form had been prepared to be used in the pouring of a concrete floor. An electrician found it convenient to stand on the form, which gave way beneath him. The court held that the Structural Work Act was not applicable in that the context of the Act relates to structures erected for the support of workmen in the construction of the building.

It appears that the concept of a structural entity erected for use in the erection of the building is emphasized in the recent case of Miller v. DeWitt, 59 Ill App2d 38, 208 NE2d 249. In that case certain supports were constructed from tubular steel scaffolding and placed to support the trusses and roof of a building during the process of remodeling. These supports collapsed causing injury. It was the position of the defendant in that case that the supports were an integral part of the building and did not constitute a temporary structure designed and used in the construction of the building. The court held that the supporting structures were supports or stays as specified within the language of the Act and that the Act related to equipment used in the construction of the building. It further emphasized that the supports which collapsed were intended to be removed as soon as the permanent structure was completed and hence were not a permanent part of the building. The thrust of the opinion is that the Act applied because the supports described as shores were erected for use in the construc-

tion within the purview of the Act and were expressly distinguishable from "the integral and permanent part of the building."

In its opinion the court stated that the statutory language is its best exposition and that absent a statutory definition, the usual meaning of words are to be employed. It would appear, therefore, that this opinion is authority for defining a scaffold in its common meaning as a temporary framework designed to be used in the course of construction of a building. This opinion notes Legowski v. Moreland & Company, and Thon v. Johnson, and distinguishes the facts in that opinion from those cases and to such extent approves them as authorities.

In Bradley v. Metropolitan Sanitary Dist., 56 Ill App 2d 482, 206 NE2d 276, plaintiff was injured while working in an excavation and was killed as a result of a cave-in. Plaintiff sought to recover under the Structural Work Act, it being the theory that the Act made it a duty to provide supports and sidings to prevent the cave-in. The court determined that the Act does not specify when supports or braces shall be used and that the injury did not result from the insufficiency of the supports because none had been used. The court said:

> "Section 60 of the Illinois Structural Work Act only provides for protection when a scaffold or other contrivance is 'erected or constructed.' We cannot consider the mandatory requisites of the New York law in construing the provisions of the Illinois statute which apply only when a scaffold is used."

The court's understanding of the meaning of the Act is stated in the following language:

> "From section 60 of the statute it would appear that its purpose is to give protection to persons

employed on scaffolds or mechanical contrivances or passing under or by the same. The purpose may also be gleaned from other sections. Section 64 pertains to scaffolds on special types of structures such as water pipes, tanks and chimneys; it sets out requirements for a support or other suitable device below a scaffold to prevent injuries in the case of accidents to the working scaffold. The language of that section does not require that scaffolding be used on these projects; it merely requires that a safe subscaffolding be used if scaffolding in fact is utilized. Section 65 relates to flooring and beams and section 66 to elevating machines."

It appears that the substance of the court's opinion is that the statutory language is not to be broadened to include every place at or upon which a person may work.

In Bounougias v. Republic Steel Corp., 277 F2d 726, the court considered whether or not a crane affixed to rails suspended from the ceiling of a building was to be considered a scaffold when it was placed in position for use by workmen painting. The court emphasized that:

"It was positioned temporarily just as any scaffold would be constructed, or positioned temporarily to accomplish its purpose.",

and determined that it had been literally erected and constructed for use in the painting.

Plaintiff strongly urges that the Bounougias v. Republic Steel Corporation constitutes authority which requires us to hold that the permanent roof was the equivalent of a scaffold or platform erected or constructed for use in the construction of the building. The opinion employs language which is considered to mean that "furnish" is synonymous with "erected and constructed," and plaintiff argues that the roof was furnished as a

65

scaffold or platform. The Bounougias opinion relies upon Schultz v. Ericsson Co., 264 Ill 156, 106 NE 236. The interpretation by the Federal Court in the opinion is not a precise statement of the holding of the Illinois Supreme Court in Schultz. That case was filed in the Municipal Court as a statement of claim alleging, ". . . failure to furnish him a proper, safe and sufficient scaffold upon which to work. . . ." It was contended that the allegations of the statement of claim were insufficient for failure to plead the Structural Work Act. The court pointed out that in the Municipal Court, claims of this class did not require written pleadings other than expressly prescribed and provided by rule; that the statement of claim need not set forth a cause of action with the particularity required of a complaint at law. Holding that there was a sufficient pleading of statement of claim under the Municipal Court Act, the court noted that the defendant was advised of the nature of the cause as the language "proper, safe and sufficient scaffold upon which to work" was almost in the language of the statute. It would thus appear that the authority for the language of the Federal Court is of doubtful relevance upon the issue at hand.

The plaintiff further urges that Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270, sustains his position. In that case the plaintiff workman was lifted some 12 feet in a bucket of a "loader" attached to a tractor. The thrust of that opinion is somewhat different from the issue here, for the amended complaint alleged use of a hoist, an item which is specifically included in the Act. The language of the pleading refers to the hoist being used as a scaffold or a working hoist, while the defendant denied that the machine was a scaffold or a hoist. There was an allegation of a duty to provide a safe and suitable hoist. The court determined that the defendant had knowledge of the fact that the machine was used to lift men to places where they might work.

66

The opinion employed language noting that the machine was positioned temporarily as any scaffolding would be temporarily placed to accomplish its purpose, but explicitly noted, "It was not merely a part of the construction work itself."

We have considered Skinner v. U. S., 209 F Supp 424, which plaintiff urges is persuasive in the instant case. Recovery under the Illinois Act was sought where ladders employed in painting were placed against large doors of a hangar which were electrically operated. It is noted that ladders are specifically included in section 1 of the Act. It appeared that under the arrangement in effect, representatives of the Government had the sole right to control the operation of the doors, and the mechanism used to control the doors. Despite evidence of certain precautions alleged to avoid the electrically operated movement of the doors, a door on which plaintiff was working was moved and, of course, such movement caused the ladder to fall. The court held essentially that while the United States was not technically in charge of the painting, it was in complete charge of the doors against which the ladders were placed, and the issue determined was, that for purposes of the Act it was in charge of the work being done. While there is language in the opinion describing the doors as an integral part of a scaffold, it does not seem that the opinion, in its entirety, can be said to be relevant to the issues in this case.

We have considered the opinion in Evans v. Portland Ry., Light & Power Co., 66 Ore 603, 135 P 206 (1913). It is urged that that case is conclusive upon the issue before us as there a man fell from a completed railroad trestle upon which he was working in connection with the construction of a power plant. The court used language to the effect that as long as the trestle was employed as a means of erecting the powerhouse, it was for that one occasion a scaffold or staging under the

67

Oregon statute. That statute, however, has elements which are not included in the Illinois Act:

> "All owners . . . engaged in the construction . . . of any building . . . shall see that . . . scaffolding, staging or other structure more than 20 feet from the ground or floor shall be secured from swaying and provided with a strong and efficient safety rail or other contrivance so as to prevent a person from falling therefrom. . . ."

The plaintiff fell from the trestle which was some 20 or 22 feet above ground level. The issue before the court was the contention of the defendant that the language, ". . . other structure more than 20 feet from the ground . . ." should be interpreted only as applying to structures of the class of "scaffolding" and "staging." It is in connection with such contention that the opinion equates the trestle, a permanent structure, with a scaffold, and the opinion actually holds that the trestle constituted a platform structure within the meaning of that statute. The Oregon statute, therefore, contains elements not present in the Illinois Act and the case is decided upon such elements.

To the same effect is Bridal Veil Lumbering Co. v. Pacific Coast Cas. Co., 75 Ore 57, 145 P 671 (1915). In that case the plaintiff fell from a flume which was more than 20 feet above the ground so that a handrail was required under the statute. We have also been referred to Koepp v. National Enameling & Stamping Co., 151 Wis 302, 139 NW 179 (1912). In that case the injuries resulted when plaintiff fell from an 11-foot ladder which had been placed upon a movable platform which itself extended some 20 feet above the floor. The court described the instrumentality as a scaffold and ladder combination. It appears that the opinion was actually undertaking to construe the scope and extent of the word "repairing" under the Wisconsin statute. It appears,

therefore, that this opinion does not assist in the determination of the issues in this case.

It is urged strongly that this case should be viewed in the light of the fact that the plaintiff was engaged in an ultrahazardous form of work. As noted in Bradley v. Metropolitan Sanitary Dist., 56 Ill App2d 482, 206 NE2d 276, there is a distinction between a cause of action under the Structural Work Act and a cause of action for failure to provide a safe place to work. Here, Counts II, IV and VI contained allegations that plaintiff worked on a steep roof and that no scaffold was provided, while Count VII includes allegations that the work was ultrahazardous and that there was a duty to furnish a safe place to work, that there was a negligent breach of a duty, and that the plaintiff was free from contributory negligence. The trial court, however, at the close of all the evidence, withdrew these counts from the jury. There is no cross-appeal. This, together with the evidence, discloses that neither the plaintiff nor his associates at the time of the injury, made complaint of the working conditions, or requested safeguards of any sort. We do not hereby say that complaints of conditions or demands by workmen are essential to the determination of liability under the Act where its provisions are applicable. Here, however, the workmen were sophisticated and knowledgeable as to the work being done and plaintiff had been a member of the Iron Workers Union for 13 years and engaged in all forms of its work. These observations are limited solely to evaluating the contention that ultrahazardous work was engaged in as viewed by the trial court.

■■■■■ Plaintiff's argument is that there should be a liberal construction of the statute to effectuate a legislative intent to provide for the protection of persons engaged in ultrahazardous work. The Illinois cases cited by plaintiff are not focused upon the problem at hand. Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE

551, was an action resulting from the failure of a hoisting device and the issue was framed upon section 7 of the Structural Work Act. Schultz v. Ericsson Co., 264 Ill 156, 106 NE 236, and Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134, are directly and explicitly concerned with a scaffold in the common definition. As stated in American Steel Foundries v. Gordon, 404 Ill 174, 88 NE2d 465, the rule of liberal construction does not permit either restriction or enlargement of the meaning of the terms of the statute, and it is not within the province of the court to take from, or enlarge, the meaning of a statute by reading into it language which will, in the opinion of the court, correct any supposed omission or defect. Rather, we must seek the construction of statutory language in the usual meaning attached to the words used. Blough v. Ekstrom, 14 Ill App2d 153, 144 NE2d 436, at p 162. In Larson v. Commonwealth Edison, 33 Ill2d 316, 211 NE2d 247, the Supreme Court spoke of liberal construction in its refusal to limit or restrict the meaning of the words "in charge of" by adding the connotation of exercising supervision and control. In distinction, we are here asked to add new connotations to the language of a statute which does not require that scaffold or comparable appliances be used, and which specifies the instrumentalities, each with its own use, and an apparent usual meaning, none of which suggest or connote a structure of the sort now at issue. As was said in Reed v. Johnson, 55 Ill App2d 67, 204 NE 2d 136, at p 75, it is possible that the Structural Work Act, enacted as it was before the Workmens Compensation Act, is a proper subject for legislative review and clarification, but we, as a court, cannot perform the functions that properly fall within purview of the Legislature.

For the reasons herein set forth, the judgment of the trial court is reversed.

SMITH, J., concurs.

CRAVEN, J., dissenting:

The Illinois Structural Work Act is an Act to provide "for the protection and safety of persons in and about construction, repairing, alteration or removal of buildings, bridges, viaducts, and other structures," as indicated by its title. (Ill Rev Stats 1963, c 48, § 60 et seq.) It was stated in the first case interpreting the Act that an examination of the entire Act "will clearly show that it was the intention of the legislature to require owners and contractors constructing, repairing, altering or painting the buildings and structures mentioned in the act, to provide for the protection and safety of the men engaged in the work." Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551 (1911).

It is obvious that the legislature has recognized dangerous and extrahazardous occupations and has, by this legislation, attempted to reduce the hazard to the fullest extent possible (Schultz v. Henry Ericsson Co., 264 Ill 156, 106 NE 236 (1914); Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134 (1958)). The language of the Act should be construed to give effect to this legislative intention, which is ascertainable not only from the language of the Act but from the evil to be remedied and the object to be obtained. Brackett v. Osborne, 44 Ill App2d 441, 195 NE2d 8 (1963).

In view of this expression of legislative purpose and the previous decisions mandating a liberal construction of the Act, I am unable to agree with the majority opinion that the roof involved in this case is excluded from the Act by reason of the fact that it is a part of the

permanent structure of the building. To so hold frustrates, rather than effectuates, the purpose of the statute.

The case of Thon v. Johnson, 30 Ill App2d 317, 174 NE2d 400 (1961), held that a form constructed to hold concrete for a landing at the top of a stairway from a garage to a basement, into which form the plywood bottom had not yet been placed and the concrete poured, was not a scaffold within the meaning of our Act. On the facts in Thon, the form was not furnished as a place to work. The plaintiff in that case, an electrician, made use of the form as a place to work and was injured. The court, in reversing a judgment for the plaintiff, observed that a contrary holding "would be the equivalent to holding that each and every place where a workman chooses to stand thereby becomes a scaffold within the meaning of the statute."

Thon is substantially different from the facts in the instant case. Here the roof was furnished as a place to work and its *temporary* use as a place to work in the process of construction was obviously contemplated by all parties. The statutory language of " 'erected and constructed' means furnished, and it was furnished." Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270 (1962) ; Bounougias v. Republic Steel Corp., 277 F2d 726, CA 7th, Ill.

I would agree that a workman cannot, by the use of a permanent part of a building for scaffold purposes, convert the same into a scaffold or other contrivance, within the scope of the statute, merely by so using it, as was held in Thon. See also Broderick v. Cauldwell-Wingate Co., 301 NY 182, 93 NE2d 629. However, when a permanent portion of a building or structure is furnished as a place to work for work that would otherwise require construction of a temporary scaffold or

other contrivance, within the purview of the statute, it should not be excluded from this safety statute merely because it is a part of a permanent building.

Thon is annotated at 87 ALR2d 973. At pages 983, 984 of that annotation, it is stated:

> "It has sometimes been argued, usually with little success, that the defective apparatus responsible for the injury is not a scaffold because it is part of the permanent building or structure under construction rather than the temporary platforms contemplated by the statute.

> "Where the defendant contended that an injury caused by a brick falling from a platform consisting of loose sheathing boards laid across the roof joists of a building to provide a working area for bricklayers could not provide a basis for recovery under the New York Scaffold Law because the platform was not a scaffold, since the loose boards forming it were intended to be a permanent part of the building and were to be ultimately nailed down by carpenters, it was held in Carpenter v. Burmeister (1925) 217 Mo App 104, 273 SW 418, that even though the boards were to be used permanently, they constituted a temporary scaffold for brick layers at the time of the accident.

> "Planking intended to be ultimately nailed down as part of the flooring in a coal trestle being constructed by the defendant and which at the time of the accident was laid loosely over the floor joists to permit workmen to walk back and forth was a scaffold, held the Court in Ross v. Delaware, L. & W. R. Co. (1921) 231 NY 335, 132 NE 108, saying that the planks were not a permanent part of the flooring but were a temporary device to allow

73

workmen to accomplish their jobs high above the ground."

As stated in Thon, there is little authority in Illinois as to what is or is not a scaffold within the meaning of the statute. Each case must necessarily be determined upon its own set of facts. The authorities in the cited ALR annotation suggest that, in making this determination, consideration should be given to the elements of danger contemplated by the statute, as well as the nature and use of the device. The temporary or permanent nature of the device or contrivance should be only a factor in determining whether it is within the statutory language, which includes "scaffolds," "hoists," "cranes," "stays," "ladders," "supports," or "other mechanical contrivances," erected or constructed, i. e., furnished, for the use in the erection, alteration, or removal of any house or building.

Other issues presented by this appeal, relating to the question of whether or not the defendants were in charge of the work, were properly submitted to, and determined by, the jury under the authority of Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965).

For the reasons stated, I would affirm the judgment entered upon the verdict.