(No. 40661.—

CHARLES LOUIS, Appellee, *vs.* LOUIS BARENFANGER, d/b/a Barenfanger Construction Company, Appellant.

*Opinion filed March 28, 1968.—Rehearing denied May 27, 1968.*

UNDERWOOD and HOUSE, JJ., dissenting.

WHAM & WHAM, of Centralia, and RAEMER & AL-BRIGHT, of Salem, for appellant.

HANAGAN & DOUSMAN, of Mt. Vernon, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

On July 7, 1956, Charles Louis, a workman employed by a subcontractor in the construction of a school building, sustained injuries when he fell from the place where he was working. He filed complaint against the general contractor, alleging violations of the Structural Work Act. (Ill. Rev. Stat. 1955, chap. 48, pars. 60 *et seq.*) On motion by defendant the third amended complaint was dismissed for failing to state a cause of action, and plaintiff appealed to the appellate court. That court reversed, remanding the cause for further proceedings (81 Ill. App. 2d 104), and we have granted defendant's petition for leave to appeal. The question is whether the complaint alleges a cause of action under the statute.

Section 1 of the Structural Work Act says "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1955, chap. 48, par. 60.) Section 9 provides in part that any person injured as a result of a wilful violation of the Act is given a right

of action for damages. Ill. Rev. Stat. 1955, chap. 48, par. 69.

Insofar as it is relevant the complaint alleges that defendant knowingly permitted a support, stay, or other mechanical contrivance to be used in the construction of said building, when said support, stay or other mechanical contrivance was not so erected, constructed and placed as to give proper and adequate protection to the life and limb of the plaintiff and that its component parts were too far apart and of insufficient width to give proper footing. It is further alleged, in a separate paragraph 8 D, that planking type scaffolds used in constructing the building "were not so placed as to give proper and adequate protection to the life and limb of the plaintiff and other persons employed or engaged thereon." The complaint then alleges that "as a direct and proximate result of the defendant's failure to comply with the provisions of the aforesaid Statute in one or more of the foregoing respects, the plaintiff fell from the place where he was working." The defendant demanded a bill of particulars with regard to the allegations of paragraph 8 D, in response to which plaintiff stated that he was not standing on a planking type scaffold when he fell, because none was properly placed for his use.

Arguing on the basis of facts nowhere alleged in the complaint or bill of particulars, defendant says that an integral part of a building under construction does not constitute a scaffold or support within the meaning of the Act, and that since the plaintiff by the bill of particulars admits he was not using a "planking type scaffold" his fall had no connection with any of the devices mentioned in the Act. The narrow question presented on this appeal is whether the complaint ought to have been dismissed in view of the bill of particulars and whether the failure to provide a scaffolding is a violation of the Act. In determining this issue, we must be mindful that we have construed

the objective of this Act as to provide protection to workmen engaged in extrahazardous work. *Schultz* v. *Ericsson Co.*, 264 Ill. 156, 165; *Gannon* v. *Chicago, Milwaukee, St. Paul and Pacific Railway Co.*, 22 Ill.2d 305, 317, 318; *Larson* v. *Comonwealth Edison Co.*, 33 Ill.2d 316, 322.

As we noted in the *Gannon* case: "[In considering] the construction of this act, we must apply the legal axiom that the words of a statute should be construed to give effect to the legislative intention, which must be ascertained not only from the language of the entire act, but from the evil to be remedied and the object to be attained.

\* \* \*

"\* \* \* As its title signifies, the Scaffold Act endeavored to give protection to workmen engaged in structural work by requiring certain standards for such work, and by providing both criminal penalties and civil liability for failure to comply therewith. The statutory purpose, as interpreted in the early *Schultz case* [citation] was 'to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal.' "

Certainly, the failure to furnish a scaffold could be actionable at common law in many negligence situations. Thus, it is well-established that a general contractor in control of premises must furnish the employees of sub-contractors a safe place to work. See: 20 ALR 2d 873. To hold that the failure to furnish a scaffold would not be actionable under this Act would, as we noted in *Larson* v. *Commonwealth Edison Co.*, 33 Ill.2d 316, 325, produce "the absurd result \* \* \* that a statute designed to broaden the common-law duty and to give added protection, would be construed as imposing a lesser duty than the common law."

From a realistic viewpoint, if the failure to provide scaffolding would not be actionable under this statute, then every person to whom the Act was directed could defeat

its purpose by simply failing to provide a scaffold, stays or supports.

Accordingly, we hold that the failure to provide scaffolding can be the basis of a cause of action under the Structural Work Act.

Another question urged is whether a permanent structure, used as a stay or temporary support, is, because of its permanent character, excluded from the Act. The Act itself nowhere excludes, expressly or impliedly, from its broad coverage permanent structures.

In *Schultz* v. *Ericsson Co.,* 264 Ill. 156, 164, we carefully noted: "No attempt is made to define what shall be considered or shall constitute a safe, suitable and proper scaffold, which, from the very nature of things, could not well be done, for what might be a safe, suitable and proper scaffold for one kind of work under one set of conditions or circumstances would be wholly inadequate, insufficient and unsafe for doing another kind of work under other conditions or circumstances and at a different height from the ground. Consequently the legislature has not attempted to define what shall constitute a safe, suitable and proper scaffold but has cast the burden of constructing safe, suitable and proper scaffolds upon the employer, and he cannot escape liability for injuries sustained by reason of his failing to furnish such scaffolds by pleading ignorance of their dangerous condition when the conditions are known to him."

Thus, an airplane hangar door (*Skinner* v. *United States,* 209 F. Supp. 424); an overhead crane which ran the length of a steel mill (*Bounougias* v. *Republic Steel Corp.* (7th cir.), 277 F.2d 726); a shovel extension mounted on a tractor, (*Oldham* v. *Kubinski,* 37 Ill. App. 2d 65); a plank laid across a concrete form (*Frick* v. *O'Hare-Chicago Corp.,* 70 Ill. App. 2d 303) have all been held scaffolds under the facts in those cases.

The Wisconsin Supreme Court in *Koepp* v. *National Enameling and Stamping Company,* 151 Wis. 302, 139 N.W. 179, interpreted a statute similar to our own and said at p. 184: "Much that has been said respecting 'repairing' applies to 'scaffolding' and 'mechanical contrivance.' The scope thereof would reasonably include any temporary structure made up of parts, viewing the term in its broadest scope, used for support while doing any kind of work mentioned in the law,—any kind of an elevated platform for workmen to use in the performance of their duties. Any combination for use in doing any kind of work mentioned in the statute where the servant is dependable thereon for support, in place of an ordinary surface, such as the ground or floor, is a mechanical contrivance. The Legislature, in the combination of words, 'scaffolding, hoists, stays, ladders or other mechanical contrivance,' viewed in a broad remedial sense in favor of employees, left little, if anything, uncovered which may be used in the work mentioned, where required to be done beyond the reach of one standing on an ordinary surface." 151 Wis. at 314, 315, 139 N.W. at 184.

The 1967-1968 supplement to 35 Am. Jur., Master and Servant, par. 195, p. 625, states: "Where the device being used as a scaffold was, or was intended to be, a permanent part of the structure being worked upon, the rule seems to be that if the apparatus in question was being put to a temporary use as a support for workmen at the time of the accident, it is a scaffold, regardless of its ultimate use as a part of the permanent structure. (See Anno: 87 A.L.R. 2d 983.) Another criterion used by courts to determine whether a particular structure is a scaffold is the element of danger involved in its use and whether this was the danger which the legislature was attempting to alleviate in enacting the statute requiring safe scaffolds."

We have considered *Bohannon* v. *Joseph T. Ryerson & Son, Inc.,* 72 Ill. App. 2d 397; *Parizon* v. *Granite City Steel Co.,* 71 Ill. App. 2d 52; *Schaffer* v. *Veach,* 61 Ill. App.

2d 168, and *Bradley* v. *Metropolitan Sanitary Dist.,* 56 Ill. App. 2d 482, but in view of what we have held do not consider them controlling.

The appellate court was correct insofar as it reversed the judgment of the circuit court and remanded the cause for further proceedings. The judgment of the appellate court is affirmed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Judgment affirmed and cause remanded.*

Mr. JUSTICE UNDERWOOD, dissenting:

It is not disputed that plaintiff fell while walking along a series of metal girders known as long span steel joists and T-rails and that these formed a permanent and integral part of the building under construction. The opinion of a majority of my colleagues extending the scope of the Structural Work Act to impose a duty to erect scaffolding and to include as such the integral and permanent portions of buildings is a substantial departure from the heretofore consistent interpretations of that Act to the contrary.

The third amended complaint in this case was dismissed as failing to state a cause of action. The sole question before us is the correctness of this ruling. The complaint is clearly based upon the statute and alleges no common-law duties or breaches. Nor does it allege that defendant owed a statutory duty to plaintiff to erect scaffolding and it seems to me clear that no such duty is imposed by the Structural Work Act which the complaint quotes. Unless such duty is statutorily imposed or the permanent portions of the building are included within the term "scaffolds", the trial court's action was correct.

The court's opinion holds the Act creates a statutory duty to erect scaffolds and relies upon general language in our decisions indicating the purpose of this legislation was to protect those engaged in structural work. Certainly that

is its purpose, and the purpose is a laudable one, but quoting generalities to indicate that the result achieved by the majority opinion is a desirable one does little to resolve the specific questions presented: (1) Does our statute impose a duty to erect scaffolding in addition to the contractor's common-law obligation to provide a reasonably safe place to work? (2) If so, does a permanent, integral part of the building under construction qualify as a "scaffold" within the statutory meaning? To support its affirmative answer to the first of these, the majority cite, in addition to the generalities in *Schultz* and *Gannon,* only *Larson* v. *Commonwealth Edison Co.,* 33 Ill.2d 316, which dealt with the question as to whether certain defendants were "in charge of" the work. The injured workman in *Larson* fell from the ordinary type of scaffold, and the problems presented by this case were not before us in *Larson;* it is not authority for the result here reached by the court. The A.L.R. annotation (20 A.L.R. 2d 873) deals with the common-law duty of the contractor and specifically refers the reader to the statutes of his State in order to determine whether this principle is embodied therein.

Section 1 of our statute provides: "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person * * * for the use in the erection, repairing, alteration, removal or painting of any house, building * * * shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to * * * persons employed or engaged thereon, * * * as to prevent the falling of any material * * * used or deposited thereon." (Ill. Rev. Stat. 1955, chap. 48, par. 60.) It has been uniformly held that "section 1 of the Act does not undertake to state when or under what conditions a scaffold is to be erected as a matter of statutory duty" (*Parizon* v. *Granite City Steel Co.* (4th dist.), 71 Ill. App. 2d 53, pp. 60-61,

leave to appeal denied 35 Ill.2d 629; see, also, *Schaffer* v. *Veach* (4th dist.), 61 Ill. App. 2d 168; *Bradley* v. *Metropolitan Sanitary District* (1st dist.), 56 Ill. App. 2d 482), and as earlier noted the complaint before us does not allege that defendant owed plaintiffs such duty. Plaintiff now argues that the use of the word "placed" in the statute manifestly imposes a duty upon the contractor to erect scaffolds, but it seems to me clear that, when read in the context of the Act, "placed" is referring to the method of constructing the supports, stays or scaffolds rather then the necessity of providing them. The Act defines the standards for constructing these mechanical contrivances but it does not purport to say when and where they must be furnished. This has, until now, been the uniform holding of the appellate courts. *Parizon,* pp. 60-61; *Schaffer; Bradley.*

Turning, then, to the question whether permanent, integral parts of the structure being built may qualify as a "scaffold" or "support", the statutory language and decisions in this State are equally persuasive that they cannot. The pertinent portions of the statute are quoted above, and the Act does not further define scaffold or its other terms. However, the common definitions of a scaffold are unanimous in their reference to its temporary character. Webster's Third New International Dictionary defines a scaffold as a "temporary or movable platform * * *", the Shorter Oxford English Dictionary says a scaffold is "a temporary platform * * *", and Webster's New World Dictionary of American Language defines it as "a temporary wooden or metal framework * * *".

As pointed out in *Parizon* v. *Granite City Steel Co.* (4th dist.), 71 Ill. App. 2d 53, 61, "The connotation of the operative words, '* * * erected or constructed * * * for the use in the erection, repairing * * *,' is that of a temporary erection for the express specific purpose of construction. The concept of the erection for such specific purpose is substantiated in the provisions of section 4 of the

Act (Ill. Rev. Stat. 1965, chap. 48, par. 63). It provides for inspection of scaffolding and the several items specified in the statute by the Director of Labor or the local authorities of municipalities charged with the duty of enforcing 'Building Laws.' This section provides that if upon inspection such scaffolding or the companion items are found dangerous to life or limb, the authorities should notify the person responsible for the erection or maintenance, prohibit the use thereof, and the person responsible is required to remove the scaffolding or platform." Such statutory provisions are scarcely consonant with this court's present extension of the statute to embrace permanent and integral portions of the buildings being worked upon.

The majority again quotes general language, this time in *Schultz* v. *Ericsson Co.*, 264 Ill. 156, which, it seems to me, has no real relevance to the issues here. In *Schultz* the workman was injured while walking along a runway built upon temporary scaffolding alongside the building, and the court was in no way concerned with the questions now before us. The majority also cite *Skinner* v. *United States*, 209 F. Supp. 424; *Bounougias* v. *Republic Steel Corp.* (7th cir.), 277 F.2d 726; *Oldham* v. *Kubinski*, 37 Ill. App. 2d 65; and *Frick* v. *O'Hare-Chicago Corp.*, 70 Ill. App. 2d 303. Of these, the only case involving anything which could be thought to be a permanent part of the building under construction is *Skinner*. There the workman was killed when the *ladder* upon which he was standing was caused to fall by the movement of the airplane hangar door against which the ladder was placed. The court there specifically found that "placement of the ladder against a movable door constituted an unsafe condition" and that a "suitable scaffold was available and could have been used in lieu of the ladders." Since the Act refers to "ladders" as one of the types of mechanical contrivances included therein, I do not understand how *Skinner* can be viewed as authority for extending

the Act to embrace permanent, integral parts of the building.

Nor does the Wisconsin case, *Koepp* v. *National Enameling and Stamping Co.,* 151 Wis. 302, 139 N.W. 179, quoted at length in the majority opinion, strengthen their position. In that case the injured employee was standing upon an 11-foot ladder placed on a raised platform some 20 feet above the floor and fell when the platform supports collapsed—obviously within the statutory reference to "ladders" and "supports". It is noteworthy that the court there stated the scope of the terms "scaffolding" and "mechanical contrivance" would reasonably include "any *temporary* structure made up of parts  *  *  *  used for support while doing any kind of work mentioned in the law—any kind of an elevated platform for workmen to use in the performance of their duties." (Emphasis added.)

The final authority relied on by the majority, 35 Am. Jur., par. 195, cites to 87 A.L.R. 2d 983 as its source. That annotation refers to *Carpenter* v. *Burmeister,* 217 Mo. App. App. 104, 273 S.W. 418, and *Ross* v. *Delaware, L. & W. R. Co.,* 231 N.Y. 335, 132 N.E. 108, as holding that permanent parts of buildings may be scaffolds. However, the facts in those cases were that workmen were injured while walking upon loose planks laid across joists so that employees could walk across them. While it was intended that such planks would ultimately be nailed down (to the roof in *Carpenter*) and become permanent parts of the structure, it was precisely the fact *that they had not been permanently affixed* that caused the courts in *Ross* and *Carpenter* to hold them a scaffold.

The reason for the majority's inability to cite more persuasive authority is clear. The decisions of our appellate courts dealing with permanent parts of buildings are uniformly to the contrary.

A rather thorough review of the pertinent Illinois au-

thorities, as well as some from other jurisdictions, appears in the majority and dissenting opinions of the 4th District Appellate Court members in *Parizon* v. *Granite City Steel Co.,* 71 Ill. App. 2d 53. It would only prolong this dissent to restate them here. Shortly stated, that case turned squarely upon the court's interpretation of the statute as excluding permanent and integral parts of the building from the term "scaffolds", and as creating no duty to erect a scaffold. We denied leave to appeal at the January, 1967, term (35 Ill.2d 629), as we also did in *Bohannon* v. *Joseph T. Ryerson & Son, Inc.* (1st dist.), 72 Ill. App. 2d 397, which expressly chose to follow *Parizon.* The appellate courts, with the exception of the case before us, have been uniform in their interpretation of the Structural Work Act to exclude permanent and integral parts of the structure *Parizon; Ryerson; Bradley* v. *Metropolitan Sanitary District,* 56 Ill. App. 2d 482; *Thon* v. *Johnson,* 30 Ill. App. 2d 317; *Miller* v. *DeWitt,* 59 Ill. App. 2d 38, affd. 37 Ill.2d 273.

We have heretofore left undisturbed those cases in which the appellate courts have held that permanent integral parts of the structures being worked upon were not within the scope of the Structural Work Act and that no affirmative duty was thereby imposed to erect scaffolding in addition to such obligation as may have theretofore existed. This, it seems to me, is the plain meaning of the statutory language. It may be desirable to extend or enlarge the statutory duty, but, if so, that result should be accomplished by legislative amendment and not by judicial fiat.

Since the complaint did not, in my opinion, state a cause of action, I would reverse the appellate court and affirm the circuit court.

Mr. JUSTICE HOUSE joins in this dissent.