Joan L. McGinnis, Plaintiff-Appellee, v. Cosmopolitan National Bank and Trust Company, Individually and as Trustee Under Trust No. 4542, and T. K. Handing, Defendant-Appellant.

Gen. No. 51,502.

First District.

August 1, 1969.

CRAVEN, J., dissenting in part.

Kralovec, Sweeney, Marquard & Scoby, of Chicago (Charles V. Kralovec and Glenn H. Prohaska, of counsel), for appellant.

Roland C. Upton and George F. Witteman, of Chicago (Samuel Levin, of counsel), for appellee.

MR. JUSTICE SMITH delivered the opinion of this court.

Plaintiff's judgment for more than $60,000 for personal injuries entered on a jury's verdict is here appealed and the following errors by the trial court are asserted: (1) The Illinois Structural Work Act, Ill Rev Stats 1955, c 48, § 60, et seq. does not apply to the facts in this case, (2) the trial court erroneously permitted the plaintiff's attorney to read to the jury from the Illinois Revised Statutes and the ordinances of the City of Chicago, and (3) the trial court erred in denying a motion for judgment n. o. v. or in the alternative a new trial. The case must be reversed and remanded.

The defendant Handing was the beneficial owner of the property and also the president of the Amplifone Corporation. The legal title was in the defendant Cosmopolitan National Bank. The suit was dismissed as to the bank. Plaintiff was an employee of the Amplifone Corporation and after her coffee break at 10:00 p. m. returned to her winding machine on the first floor. She heard a co-worker call her by name and the sound seemed to come from a hole in the floor which had been cut for the purpose of installing a dumbwaiter or elevating hoist. She walked over to the opening in the floor, placed her hand on a protective wooden board about three feet high, leaned over this barrier and fell into the basement and sustained severe injuries. A special interrogatory submitted to the jury found the plaintiff was not guilty of any contributory negligence which proximately contributed to her injuries.

The plaintiff's first count charges a wilful violation of the Structural Work Act and Count II alleges that the defendant negligently violated certain provisions of the Chicago Municipal Code during the construction of the dumbwaiter as well as general common law negligence. The record shows that the reason the dumbwaiter was being put in the building was to enable the employees of Amplifone to move certain material from the basement to the first floor with greater ease. There

is no nexus between the installation of this dumbwaiter and any of the provisions of the Structural Work Act.

Elastic as the Structural Work Act has become, we do not think that fairly interpreted it can possibly relate to the facts in this case. In Bradley v. Metropolitan Sanitary Dist. of Greater Chicago, 56 Ill App2d 482, 206 NE2d 276, it was held that the Structural Work Act does not apply to an excavation for a drop manhole. The excavation or the dirt sides of this hole caved in killing the plaintiff's decedent. It was there held that a recovery under the Structural Work Act was not permissible. It was there properly held that a hole in the ground is not a mechanical device within the meaning of the Structural Work Act and by the same token it does not appear to us that a hole in the floor is a mechanical device for use in the alteration of a building. Plaintiff attempts to relate these facts to § 66 of the Act which basically provides that if elevating machines or hoisting apparatus are used in a building during the course of construction for the purpose of lifting materials to be used in such construction, then the contractors or owners shall cause such opening to be enclosed or fenced on all sides by a substantial barrier or railing at least eight feet in height. Plaintiff cites Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551, as authority for this proposition. In that case, there was no dispute but that the plaintiff fell into a shaft which was used for a hoisting machine admittedly then being used in the construction or alteration of the building. The opinion further notes that the elevators were operated by hoisting machines for the purpose of lifting materials used in the construction of the building. Claffy clearly relates to the Structural Work Act. In the case at bar, the hoist or dumbwaiter was not being used for the purpose of elevating any materials in the construction or alteration of the building, but was to be the structure itself. It thus falls

outside the perimeter of § 66, for the simple reason that it is not yet in existence.

Section 60 of the Structural Work Act is likewise relied on by the plaintiff. Section 60 of the Act refers to all scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances erected or constructed by any person, firm or corporation ". . . for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure. . . ." Admittedly the hole in the floor will become a permanent part of the structure. Admittedly the dumbwaiter may be said to be within the definition of "hoists" or other mechanical contrivances. However, neither is to be used in the erection, repairing or alteration of this structure. It is *the* alteration. It is *the* repair. The dumbwaiter has not yet become a hoist and we find some difficulty in including a hole in the floor as part or parcel of any of the items described in the statute. Plaintiff cites Louis v. Barenfanger, 39 Ill2d 445, 236 NE2d 724, as authority, but it is factually far removed from the factual situation here considered. That case held that the mere fact that the so-called scaffold is a permanent part of the building or is to become a permanent part of the building does not necessarily preclude its use as a scaffold if it was so intended. This is still a long, long way from the plaintiff's position that this hole in the floor is either a scaffold or a hoist or was so intended. The failure to provide a safe barricade for this hole in the floor is founded on common-law negligence and not on a violation of the Structural Work Act. It is thus clear to us that the trial court either should have directed a judgment in favor of the defendant on Count I of the complaint or entered a judgment notwithstanding the verdict on that complaint. It was manifestly error to submit it to the jury.

■ ■ Aside from our holding that the Structural Work Act is not applicable to the facts in this case,

the trial court over the objection of the defendant permitted the plaintiff to read certain portions of the ordinances of the City of Chicago and also parts of sections 60, 66 and 69 of the Structural Work Act. This was highly improper and prejudicial. It is stated in ILP Trial, § 87, "Reading law to jury. It is improper for counsel to read the law to the jury, or to read to the jury from law books or reported cases, and the court may properly prohibit counsel from so doing." In Marriage v. Electric Coal Co., 176 Ill App 451, the court stated at p 454:

> "In civil cases the law is given to the jury by the court, and while counsel have the right to present their view of the law in argument, they have no right to read from law books to the jury."

Plaintiff cites no authority for her position. The impropriety and the irregularity of reading the Structural Work Act to a lay jury is quite obvious. The 1967 Annotated Statutes contain reasonably close to 200 citations to cases arising out of § 60 alone. It is quite clear, therefore, that its meaning has not been quite clear either to the members of the bar or to the courts. It would seem to follow, therefore, that the application of this statute to the particular facts in this case would be more apt to be cloudy to the jury than clear. In addition, the plaintiff's attorney referred to the fact that they should remember that he had read from "the big red book." While it is proper for counsel to state in general terms what his theory of recovery or defense may be, it should remain for the court to give the proper instructions to the jury and not counsel. Proper trial practice dictates that it is for the court to instruct as to the law and not counsel. The procedure here followed was in itself reversible error.

And we think it patent that the judgment in this case cannot stand or that the defendant can be said to have

had a fair trial under the law on this record. Accordingly, the case is remanded to the trial court with directions to enter a judgment n. o. v. on Count I of the complaint dealing with the Structural Work Act and to grant a new trial on Count II involving common-law negligence. It is so ordered.

Reversed and remanded.

TRAPP, P. J., concurs.

CRAVEN, J., concurs in part and dissents in part.

MR. JUSTICE CRAVEN concurring in part and dissenting in part:

The action of plaintiff's counsel in reading extensively to the jury certain portions of the ordinances of the city of Chicago and certain sections of the Structural Work Act was improper and prejudicial, and in my view leaves this court with no alternative but to reverse and remand this case for a new trial. Accordingly, I agree with the result reached in the majority opinion.

I must respectfully note my disagreement, however, with that portion of the opinion that holds that the Structural Work Act is not applicable.

As I understand the Structural Work Act and the many cases interpreting it, it is designed to give protection to persons, not necessarily only construction workmen, in and about construction, alteration or demolition of buildings. The plaintiff here was not working in connection with the specific alteration on the premises but she was a worker on the premises and was injured by reason of a faulty barricade around a hole, and thus the Act has application. See: John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739, 38 ALR 559 (1923); Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551, affd 228 US 680, 57 L Ed 1022, 33 S Ct 715 (1911).

The majority opinion, likewise, notes that the hoist or dumbwaiter was not being used for the purpose of elevating materials in the construction but was part of the structure itself, thus seemingly stating that a permanent part of a structure is not within the purview of the Structural Work Act. The majority so held in Parizon v. Granite City Steel Co., 71 Ill App2d 53, 218 NE2d 27 (5th Dist 1966). For the reasons stated in my dissent in that case I cannot agree with the majority here. In Louis v. Barenfanger, 39 Ill2d 445, 236 NE2d 724, cert denied, 393 US 935, 21 L Ed2d 271, 89 S Ct 296 (1968), the Illinois Supreme Court held that a permanent structure used as a stay or temporary support is not excluded from the Act even though it is a permanent part of the structure.

We are here concerned with the alteration of a building to construct a device to hoist or convey work products from the first floor of a cottage used in manufacturing to the basement. In connection with this alteration a hole or opening had been cut into the floor, and the evidence indicates that it was approximately 27 x 20 inches. The evidence further indicates that there was some plywood on one side, and on another to which employees on the floor had ready access, there was a barricade of sorts consisting of a piece of lumber, apparently a one-by-six, about three feet from the floor, attached to two uprights. There was nothing between this one-by-six and the floor. If, as the court held in Louis, the failure to provide scaffolding can be the basis of a cause of action under the Structural Work Act, the failure to provide adequate and safe barricades around a hole in the floor during the alteration of a structure can likewise be a violation of the Act. Accordingly, while I concur in the result reached, I dissent from that portion of the opinion which, in my view, construes the Structural Work Act contrary to its intended purpose.