WILLIAM LLOYD ST. JOHN *et al.*, Plaintiffs-Appellees, *v.* R.R. DONNELLEY & SONS COMPANY, Defendant-Appellant.

(No. 11376;

Fourth District—May 24, 1972.

Jack E. Horsley and Donald E. Castles, both of Craig & Craig, of Mattoon, (Fred H. Kelly, of counsel,) for appellant.

Ralph D. Glenn, of Glenn & Logue, of Mattoon, for appellees.

Mr. JUSTICE VERTICCHIO delivered the opinion of the court:

The defendant, R. R. Donnelley & Sons Co., Inc., a Corporation, appeals from a judgment in the sum of $42,000 entered upon a jury verdict in favor of the plaintiffs, William Lloyd St. John, Individually, and Mary E. St. John, Individually, for the death of their son incurred from a fall while in the course of his employment.

The sole issue is whether the roof of the structure involved in the

occurrence, under the facts of the case, constitutes a scaffold within the meaning of the applicable law.

The Structural Work Act. (Ill. Rev. Stat. 1967, Chapter 48, Section 60) provides:

"All scaffolds, hoists, stays, ladders, supports or other mechanical contrivances, erected * * * for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure shall be erected in a safe, suitable and proper manner and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon * * *."

The plaintiff's complaint alleges that the defendant violated the provisions of the said section by the wilful failure to provide the decedent with a safe, suitable and proper scaffold upon or about which to work.

The facts regarding the occurrence are not controverted. In late March or early April of 1967, the R. R. Donnelley & Sons Co., Inc., defendant herein, through its general contractor, Campbell-Lowrie-Lautermilch Corporation, began work on a new plant on Route 45, North of Mattoon, Illinois. The superstructure was completed July 21, 1967, and the roofing process was nearing completion. The structural work for the roof was finished, the gypsum deck had been poured and hardened, and the roofers were applying the waterproofing.

On the afternoon of July 21, 1967, at about 3:30 P.M., Mr. Swanson, a foreman for Campbell-Lowrie-Lautermilch, Inc., sent employees to the roof to clean away the debris so that the felt and tar waterproofing could be laid on a portion of the roof. Two of the employees, James Edwards, and David St. John, son of the plaintiffs, began removing large runways that had been used as substitute roofing to cover openings left to accommodate heating, lighting, ventilating and light facilities to be installed later. The runways of two-by-fours with one-by-sixes nailed across were ten feet long by thirty-six to forty-two inches wide and weighed seventy to eighty pounds each. These runways had been used as temporary coverings over the openings while buggies of liquid gypsum were being transported across the roof.

The roof was approximately thirty-two feet over the freshly poured concrete floor.

The holes which were over a large part of the roof were to accommodate various pieces of duct work, machinery, lighting and drainage. James Edwards and David St. John, son of the plaintiffs, pursuant to their instructions from Mr. Swanson, a foreman for Campbell-Lowrie-Lautermilch Corporation, worked their way across the roof removing the runways and stacking them near the edge of the roof. Upon reaching a

certain runway, approximately twenty feet from the south edge of the roof on the southeast corner of the roof, the two men picked up this runway, and Edwards stepped one or two steps backward. As he stepped backward, he felt the other end of the runway drop. Edwards immediately looked and David St. John had disappeared. He looked through the hole in the roof and saw David St. John on the concrete below.

The runway which was being carried by the employees bore an inscription, "DO NOT MOVE" in red crayon, letters three to four inches high. This inscription had been placed on the runway in question two days prior to the occurrence by Elmer Ross, a foreman for Campbell-Lowrie-Lautermilch, Inc.

■■ It is the opinion of this court that the inscription on the runways has no probative value as to the issues herein, since the task being performed in the removing of the runways was specifically assigned to the employees.

The appellant in his brief, acknowledges that *Louis v. Barenfanger*, 39 Ill.2d 445, established new law in the State of Illinois, holding that an integral part of a structure may, under proper circumstances, be a scaffold when it is used as such.

The Supreme Court in *Barenfanger* at page 448 stated:

"From a realistic viewpoint, if the failure to provide scaffolding would not be actionable under this statute, then every person to whom the Act was directed could defeat its purpose by simply failing to provide a scaffold, stays or supports.

Accordingly, we hold that the failure to provide scaffolding can be the basis of a cause of action under the Structural Work Act.

Another question urged is whether a permanent structure, used as a stay or temporary support, is, because of its permanent character, excluded from the Act. The Act itself nowhere excludes, expressly or impliedly, from its broad coverage permanent structures."

The defendant attempts to distinguish the instant case from *Barenfanger* by pointing out that the plaintiff in *Barenfanger* fell while walking across a series of metal girders known as long span steel joists. Further, that it was necessary for the plaintiff to walk across the said girders for the purpose of placing ceiling mats.

The defendant contends that the facts in the instant case are similar to the facts in *McGinnis v. Cosmopolitan Nat. Bank & Trust Co.*, 114 Ill.App.2d 113. In the *McGinnis* case, the plaintiff, an employee of the occupant of the building, after a coffee break at ten o'clock A.M., while returning to her winding machine on the first floor, heard a co-worker call her by name. The sound came from a hole in the floor which had been installed for the purpose of a dumbwaiter or elevating hoist. She

walked over to the opening in the floor, placed her hand on a protective wooden board about three feet high, leaned over this barrier, and fell into the basement and sustained severe injuries.

She filed a suit for damages for violation of the Structural Work Act.

This court held that there was no violation of the Structural Work Act because the hole was not being used in the erection, repair or alteration of the building. It was the alteration and the repair.

The defendant contends that the instant case clearly falls under the rule of the *McGinnis* case.

The defendant urges that the Structural Work Act has not been interpreted by the Supreme Court to cover all phases of construction activities and, further, the Court has specifically refused to do so in *Crafton v. Knight & Associates, Inc.*, 46 Ill.2d, 533.

In the *Crafton* case, the plaintiff, Wayne Crafton, an iron worker, was working at the construction site. The plaintiff, at the time of the incident, was working with two other iron workers and was removing structural steel from a railsiding to the site of the actual construction. They were using an Allis-Chalmer tractor equipped with a thirty-foot side-boom hoist. The tractor was used exclusively to haul structural steel from the railsiding and storage area to the site of the building several hundred yards away. The plaintiff and his co-worker rode the Allis-Chalmer tractor, either by sitting on the seat with the operator, on the fuel tank behind the seat, or on a specially erected platform on the hoist used for the purpose of transporting people, which had been constructed by the direction of Beasley Company, the construction contractor. The plaintiff, as he was getting on the back of the tractor, had one foot on the housing of the tractor and one foot on the tractor, and when he put his right foot on the track which was all muddy and slick, the operator started backing off before the plaintiff got up on the fuel tank behind the seat, and the plaintiff fell to the ground. He suffered personal injuries as a result of his fall.

The court stated in its opinion at page 536:

"However, despite the fact that a liberal construction is within the clear purpose of the legislature, this court does not feel that the facts of this case fall within the Structural Work Act."

In the instant case the decedent was sent to the rooftop for the purpose of clearing away debris to permit further construction on the roof.

The intended use of the rooftop was the customary and usual way in the construction of a building to use a temporary device to provide footing or support above the floor for the laborers on the job. The roof was used as an elevated platform for the decedent and his co-worker

in the performance of their duty. The roof was being put to the use of a temporary platform and was so used at the time of the decedent's fall to his death.

■■ The statutory purpose of the Structural Work Act *is to prevent injuries to persons employed in dangerous and extrahazardous occupations, so that negligence on their part in the manner of doing their work might not prove fatal. Schultz v. Ericsson,* 264 Ill. 156.

The court also pointed out in *Barenfanger* at page 450 of the opinion:

"Where the device being used as a scaffold was, or was intended to be, a permanent part of the structure being worked upon, the rule seems to be that if the apparatus in question was being put to a temporary use as a support for workmen at the time of the accident, it is a scaffold, regardless of its ultimate use as a part of the permanent structure. (See Anno: 87 A.L.R. 2d 983). Another criterion used by courts to determine whether a particular structure is a scaffold is the element of danger involved in its use and whether this was the danger which the legislature was attempting to alleviate in enacting the statute requiring safe scaffolds."

■■ It is the opinion of this court that the facts in the instant case establish that the roof intended to be a permanent part of the structure was being put to a temporary use as a scaffold and thus within the Structural Work Act. The rationale of the *Barenfanger* case and the purpose of the Structural Work Act clearly support the findings of the trial court.

It is further the opinion of this court that the rationale of *McGinnis* and *Crafton* are not applicable to the facts in the instant case. Each of the said two cases involved injuries suffered in situations where neither the supports nor the mechanical contrivance were being used in the erection, repairing, alteration, removal or painting of any structure.

Accordingly, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

CRAVEN, P. J., concurs.

Mr. JUSTICE SMITH dissenting:

The majority opinion is bottomed upon the *Barenfanger* case and concludes that its rationale and the purpose of the Structural Work Act clearly support the finding of the trial court. I am mandated by the decision in *Barenfanger* and in *Spiezio v. Commonwealth Edison Co.,* 91 Ill.App.2d 392, 235 N.E.2d 323, to the proposition that a part of a permanent structure may be used as a scaffold. The hazards present in each of those cases as well as the structures temporarily used as a

scaffold are poles apart from the facts in this case and do not mandate journeying farther down the legislative avenue.

Paragraph 9 of the complaint stated that "on the roof of said factory building there being constructed was a temporary platform erected over an opening in said roof designed to hold workmen and materials employed in the erection of said factory building, which said temporary platform was supported on all four sides by edges of said roof then in the process of construction". It is this platform which the decedent was carrying when he fell through the hole in the roof. Its usefulness as a support or mechanical contrivance erected or constructed "for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure" was terminated. At the time of this accident, it was not then being used as a scaffold for any purpose. It was being removed from the premises. The decedent was neither in it or on it nor was he in any way injured by this instrumentality. Its days as a scaffold were over.

By an amendment to the complaint, the plaintiff charged that the "roof of the factory building there being constructed was, or was intended to be, a permanent part of the building and was then and there being put to a temporary use as a support for workmen, including said decedent at the time of the occurrence". This hole in the roof was not even a part of the permanent construction nor was it intended to be. The runways over the hole were temporary and were to cover these openings while buggies of liquid gypsum were being transported across the roof. These openings were to accommodate heating, lighting, ventilation and light facilities to be later installed and would then be framed with a square wooden frame and skylight. It seems crystal clear that this hole was not being used as a scaffold nor could it be. Its intended purpose was wholly different and precluded any thought that it might be used as a temporary scaffold. How a hole in a floor can support or protect anybody escapes me. It just isn't a scaffold.

This then leaves only the remainder of the roof which was apparently fully completed except for waterproofing. It is this other portion of the roof quite obviously which the decedent and his partner were using as a temporary scaffold. There was no defect, fault, failure or dangerous condition in this roof. That part of the roof contributed nothing to the injury or death of the decedent. Had he not stepped off it, he was in a perfectly safe place. It is likewise obvious that there could be no way to complete this roof without removing the runway nor was there any way to build a barrier around this hole without removing this runway and it was that removal in which the decedent was engaged. There are hazards necessarily present in construction work and unless you can

say that as a matter of law that the contractor wilfully failed to provide a safe place to work, the Structural Work Act simply does not apply to this situation. To hold otherwise is to impose an absolute liability for every injury to any employee during the process of construction. It is difficult for me to understand how the hole in this roof was erected or constructed by anybody for use in the building of the structure.

The factual situation here is more nearly akin to our *McGinnis* than it is to either *Barenfanger* or *Spiezio*. The lifeblood of legal theories are facts and when you have no facts supporting a theory, the theory dies a natural death and so it is here. The majority opinion approaches an absolute liability in structural work cases and in my judgment extends the philosophy of *Barenfanger* and *Spiezio* beyond their factual limits and beyond the plain language of the statute. The injury here resulted from no wilful failure to comply with the Structural Work Act. Accordingly, I would reverse.