(No. 45282.—)

WILLIAM LLOYD ST. JOHN *et al.,* Appellees, v. R.R. DONNELLEY & SONS CO., INC., Appellant.

*Opinion filed May 21, 1973.*

DAVIS, J., specially concurring.

JACK E. HORSLEY and RICHARD F. RECORD, JR., of CRAIG & CRAIG, all of Mattoon, for appellant.

RALPH D. GLENN of GLENN & LOGUE, of Mattoon, for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

William Lloyd St. John and his wife, Mary, the plaintiffs, brought an action for the wrongful death of their son, David, in the circuit court of Coles County against the defendant R.R. Donnelley & Sons Co., Inc., and other

persons. The first count of the complaint was brought under the Wrongful Death Act, and in the second count the plaintiffs charged that their son's death had been caused by the defendants' wilful violation of the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60-69). Prior to trial, all the defendants save R.R. Donnelley & Sons Co. were dismissed from the action. The jury returned a verdict in favor of the defendant on the wrongful death count but gave a verdict for the plaintiffs for $42,000 on the count charging violation of the Structural Work Act. Upon the defendant's appeal the judgment was affirmed by the appellate court, with one judge dissenting. (5 Ill. App. 3d 538.) We granted the defendant's petition for leave to appeal.

David St. John was employed as a laborer by Campbell-Lowrie-Lautermilch Corporation, the general contractor for a new plant being built by the defendant. On July 21, 1967, David Swanson, a foreman of the general contractor, instructed certain of his employees to go to the roof of the plant, remove debris and stack runways, which had been used in moving carts filled with concrete across the roof. Each runway was constructed of four 2 x 4's, 8 to 10 feet long, which had been laid parallel and covered with 1 x 6's measuring about 36 to 42 inches long, placed across and secured at right angles to the 2 x 4's. There was about a one-inch separation between the 1 x 6's. Each runway weighed seventy to eighty pounds, and after being used they had been scattered about the roof. At the time of the incident we discuss, the roof was in the process of being covered with felt, tar, and gravel. The runways and debris were being removed to permit the completion of this roof-covering process.

David St. John and James Edwards, at Swanson's direction, had begun to remove debris and stack runways. On the roof there were a number of openings designed to receive heating, ventilating and lighting equipment which

was to be later installed. The two men had stacked several runways near the edge of the roof, and had picked up another runway and were moving it toward the stack. Edwards was walking backwards. He took one or two steps, apparently looking over his shoulder, when he felt his partner's end of the runway drop. Not seeing St. John when he turned, Edwards dropped the runway and looked through the opening which had been exposed when the men picked up and moved the runway. He saw the body of St. John, who had fallen 32 feet to the freshly poured concrete floor of the plant. The runway, which Edwards said had debris on it, had not been attached to the part of the roof bordering the opening.

The only question presented on this appeal is whether the Structural Work Act has application under the circumstances of this case.

The first paragraph of section 1 of the Act (Ill. Rev. Stat. 1967, ch. 48, par. 60) is pertinent. It provides:

> "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or construed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

The argument of the plaintiff is that the roof, intended to be a permanent part of the factory, when it was temporarily used to support the construction workers could properly be considered as a scaffold within the meaning of the Structural Work Act. The argument continues that the scaffold or support was not constructed in a safe manner because of the openings or holes in it, and

that the consequent dangerous condition was in violation of section 1 of the Act.

The defendant acknowledges that this court in *Louis v. Barenfanger, 39 Ill.2d 445,* held that a permanent support was not, because of its permanent character, excluded from the Structural Work Act, but it contends that *Barenfanger* cannot be extended to the circumstances of this case.

In *Barenfanger* the plaintiff sustained injuries when he fell while working on steel girders that formed an integral part of a building under construction. We held that a failure to provide scaffolding can be the basis of a cause of action under the Act and that a permanent structure, used as a stay or temporary support, was not, because of its permanent character, outside of the Act.

We consider that the case here falls within the rationale of *Barenfanger.* It is clear that the rooftop was being temporarily used as a platform or support for St. John and Edwards. That the roof was intended to be a permanent part of the building is not relevant; it was being put to a temporary use as a scaffold and was within the Structural Work Act.

This conclusion is consistent with the purpose of the Act, which is to provide protection to workmen engaged in extrahazardous work. (*Schultz v. Henry Ericsson Co., 264 Ill. 156, 164.*) Too, we observed in *Barenfanger* that this court in *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co., 22 Ill.2d 305, 317,* said in construing the Act: "*** we must apply the legal axiom that the words of a statute should be construed to give effect to the legislative intention, which must be ascertained not only from the language of the entire act, but from the evil to be remedied and the object to be attained."

We are not dissuaded from the conclusion that the circumstances here were within the Act by the defendant's citation of *Crafton v. Lester B. Knight & Associates, 46*

*Ill.2d 533,* and *McGinnis v. Cosmopolitan National Bank and Trust Co., 114 Ill. App. 2d 113.*

In *Crafton* we held that a tractor which lurched and caused injury to the plaintiff could not be considered a "scaffold, hoist, crane, stay, ladder, or support." Nor, we said, could it be considered to fall within the "other mechanical contrivances" language of the Act. It is clear that the question presented here is completely dissimilar from the one we considered in *Crafton.*

*McGinnis* involved an injury to a machine operator. There the plaintiff had heard her name called and the sound seemed to come from a hole in the floor which had been cut for the purpose of installing a dumb-waiter. She walked to the opening, leaned over a low barrier which had been placed about the opening and fell into a basement, injuring herself. The appellate court, with one judge dissenting, held that the Structural Work Act was not applicable. We would first note that the decision is not binding on this court. Second, the force of the holding, we consider, is somewhat diminished by the ground on which the majority acted in *McGinnis.* It appears from the opinion that the plaintiff had taken the position that the hole or the opening in the floor itself was a scaffold. The majority said: "*** the plaintiff's position [is] that this hole in the floor is either a scaffold or a hoist or was so intended." (114 Ill. App. 2d 113, 116.) The position of the plaintiff here is of course completely distinguishable.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE DAVIS, specially concurring:

I concur in the judgment herein, but not in the rationale used to reach this judgment. The majority opinion seems to hold that when the roof of a building is

"being temporarily used as a platform in support," it is a scaffold under the Scaffolding Act.

Under this rationale it would appear logical, then, to say that since the rest of the building provides the support for the roof, the entire building is a scaffold, or that each internal floor is a scaffold as long as a workman is located on it.

This broad application of the Scaffolding Act is not necessarily dictated by this court's decision in *Louis v. Barenfanger (1968), 39 Ill.2d 445,* which concerned the classification of steel girders as a scaffold. It would seem reasonable that at some point in time a building with four walls, several floors, and a roof should cease being a scaffold and become a building. The language of the majority opinion could be construed to say that this transition never takes place.

I concur in the result reached by the majority in this case because a roof with unguarded holes for the later insertion of equipment is not a completed roof. On the facts of this case, the roof was being used as a scaffold for the purpose of inserting integral parts of the roof's structure. In my judgment, however, the circumstance does not warrant a holding that the roof in this case is a scaffold merely because it is "being temporarily used as a platform or support."