JOHN WARREN HALL, Plaintiff-Appellant, v. SHEILA CANADY, Indiv. and as Special Adm'r of the Estate of Steven Hunsick, Deceased, Defendant-Appellee.

Second District   No. 2—85—0717

Opinion filed November 6, 1986.

James T. Newman, of Cooney & Stenn, of Chicago, for appellant.

William F. Cunningham and John W. Duncker, both of O'Reilly, Cunningham, Duncan & Huck, of Wheaton, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, John Warren Hall, brought suit against Steven Hunsick, and, following his death, an amended complaint was filed against defendant, Sheila Canady, individually and as special administrator of Hunsick's estate. The amended complaint was in two counts alleging negligence and a violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) (Act) arising from injuries sustained by plaintiff in a fall at Hunsick's home while he was assisting Hunsick in the repair of a wooden deck attached to the home. This appeal pursuant to Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)) follows from the granting of defendant's motion for summary judgment as to count II based on the Structural Work Act and the finding that there was no just reason for delaying enforcement or appeal.

The amended complaint alleged that on June 4, 1983, plaintiff was helping Hunsick work on a wooden deck at Hunsick's home when he fell against a loose railing, which gave way causing him to fall to the ground and become injured. Count II involved a violation of the Act and alleged that both Hunsick and defendant, Hunsick's daughter, were in charge of the repair of the deck and that his duties required him to stand on the deck, which was being used as a scaffold and which was not safe in various respects in wilful violation of the Act. Thereafter, defendant moved for summary judgment on the Structural Work Act count contending that the Act was not intended to apply to the facts here where plaintiff was an unpaid volunteer doing work at

the residential home of a friend, that neither Hunsick nor defendant was in charge of the work, and that there was not a wilful violation of the Act.

The depositions of both plaintiff and defendant Sheila Canady were filed by the parties. In pertinent part, plaintiff's deposition states that for about one year prior to the accident he regularly dated Sheila Canady and frequented the home shared by Canady and her father. He worked as a dispatcher for Commonwealth Edison Company, and had been a crew leader for electrical work projects. He was not a carpenter. Hunsick told him that he was going to replace rotten boards on a wooden deck off the kitchen. The deck was about 6 feet off the ground. Plaintiff obtained some boards from Commonwealth Edison and dropped them off at the home a week prior to the accident. The deck is supported by vertical 4-by-4 boards cemented in the ground. The floor of the deck running north and south consists of 2-by-4 boards which are braced by 2-by-10 boards going east and west. On the day of the accident, plaintiff came to the home and observed that Hunsick had replaced some of the 2-by-4 boards on the deck. Hunsick had not asked him to help, but plaintiff knew Hunsick was going to work on the deck that day and intended to assist him. Hunsick loosened the railing on the deck so that plaintiff could get the boards off. They worked together, and Hunsick didn't give him orders or tell him how to take up the boards. After they had pulled up about half of the boards of the floor of the porch, plaintiff fell off balance while pulling a nail. At the time he was standing with one foot on a 2-by-10 board and the other foot on a remaining 2-by-4 board. He reached for the railing, it gave way, and he fell 6 feet to the ground injuring himself. Plaintiff stated that Sheila Canady was at home that morning, but she was not present while they were working.

In relevant part, Sheila Canady's deposition and her affidavit filed with the motion for summary judgment reveal that she and her father were the owners of the house which was held in trust. The home and attached deck were built in 1975 when she moved in, and the deck had not been modified since its erection except for staining. She was working in the yard while plaintiff was working on the deck and was not paying attention to the work or what plaintiff and Hunsick were talking about. She did not know the railing to the deck was loosened and wedged against the house.

The trial court granted the defendant's motion for summary judgment as to count II based on a violation of the Act, finding that the deck and railing were not devices or contrivances erected or constructed for use in the work in which plaintiff was engaged at the

time of the occurrence. The court also made special findings that, based on precedent, the Act applied to volunteers and that Sheila Canady individually was not in charge of the work in question.

On appeal, plaintiff raises several contentions relating to the applicability of the Structural Work Act to this case. He first contends that the court below erred in finding that the deck and attached railing were not a scaffold. He also contends that a "gratuitous" worker is protected under the Act, that both Canady and Hunsick were in charge of the work, and that both Canady and Hunsick wilfully violated the Act. In view of our disposition of the case on the first issue presented, we need not consider the remaining contentions.

It is plaintiff's contention that the Act does not exclude permanent structures from its broad coverage and the court's inquiry is not limited to the identity of the object, but rather how it was being utilized at the time of the injury. He maintains that he was using the 2-by-10 portion of the porch to support himself as he removed the rotten 2-by-4 boards. When he tried to use the railing as a support to prevent the fall, that, too, was a temporary scaffold, and, accordingly, both the 2-by-10 boards and the railing are scaffolds within the meaning of the Act and the relevant Illinois decisions. Essentially, defendant responds that although the deck provided plaintiff with support, it does not represent the type of extrahazardous condition intended to be eliminated by the Act under the facts here and is not the type of permanent structure that Illinois cases have found within the coverage of the Act.

■ The relevant section of the Act for purposes of this case is section 1, which provides, in pertinent part:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, ***." (Ill. Rev. Stat. 1985, ch. 48, par. 60.)

The Act should be given a liberal interpretation in order to effectuate its purpose of protecting persons engaged in extrahazardous occupations of working in and about construction, repairing, altering, or removing buildings, bridges, viaducts and other structures. (*Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 155, 481 N.E.2d 709.)

However, the Act has never been interpreted to cover any and all construction activities (107 Ill. 2d 151, 155, 481 N.E.2d 709) and should not be extended by unnatural interpretations, especially where existing workers' compensation and tort remedies remain to afford relief to injured workers (*Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878, 882, 473 N.E.2d 385). Particular attention must be directed to the special circumstances surrounding each injury-causing accident. *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 295-96, 448 N.E.2d 1011.

■ It is evident that plaintiff and Hunsick were repairing and working on the deck itself. It was not being used as a scaffold; nor is there any evidence that it had been erected or constructed originally for that purpose. It was a permanent deck which had been built in 1975 at the time the house was constructed. While it has been held generally that a permanent structure, used as a stay or temporary support, is within the broad coverage of the Act (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 449-51, 236 N.E.2d 724; see also *St. John v. R.R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 274-75, 296 N.E.2d 740), the application of this principle as to whether a particular structure is a scaffold should also be viewed along with the element of danger involved in its use and whether this was the danger which the legislature was attempting to alleviate in enacting the statute requiring safe scaffolds. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 450, 236 N.E.2d 724.) We do not believe, under the facts present here, that the railing and the portion of the deck which plaintiff stood on while making repairs to the deck itself, which was in existence for over eight years, were intended by the legislature to be within the meaning of a scaffold erected or constructed for the use in the erection, repairing, alteration, removal or painting of any house.

As Justice Davis pointed out in his specially concurring opinion in *St. John v. R.R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 296 N.E.2d 740, "[i]t would seem reasonable that at some point in time a building with four walls, several floors, and a roof should cease being a scaffold and become a building." (54 Ill. 2d 271, 276, 296 N.E.2d 740 (Davis, J., specially concurring).) For a long time the deck was a permanent part of the house and used as a floor. Where a floor is used as a floor, it is not a scaffold or other similar mechanical device within the statutory definition. (*Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, 972, 464 N.E.2d 1239; see *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 370, 325 N.E.2d 607.) In short, the permanent deck and railing here were not erected or constructed for use in the construction or repair of this home, and al-

though plaintiff was using part of the deck to stand on as he repaired it, it was not a scaffold within the meaning of the Act, but was the permanent floor of a porch which was a part of the home.

█ As the material facts in this case are not in dispute, defendant was entitled to summary judgment as a matter of law for the reasons stated above. Although other contentions are raised concerning the applicability of the Act to the facts here, a reviewing court will not consider questions or contentions which are not essential to the determination of the case before it. *Unger v. Nunda Township Rural Fire Protection District* (1985), 135 Ill. App. 3d 758, 764, 482 N.E.2d 123.

Affirmed.

NASH, P.J., and WOODWARD, J., concur.